Avery, J.
The plaintiffs in the action of ejectment claimed that the title to the land in controversy had descended to Mrs. Dubois, from her father, David W. Hinman, who died in 1820. The defendant, Waggoner, insisted that the title which Hinman once held, had passed, by a sheriff’s sale, to Daniel Hamilton, from whom he purchased. If the sale to Hamilton was void, then the defense fails, and the plaintiff’s right to possession of the premises is established.
The record introduced or offered to sustain the sale commences with a writ dated May 22, 1819, in the name of Franklin Rising against Philip R. Hopkins, James Williams, and David W. Hinman, issued from the court of com *102 mon pleas of Huron county to the sheriff of the same county. Service upon all the defendants, as appears by the record, was made on the same day.
In the same month of May, and at the May term of the court, the plaintiff filed a declaration in case, upon a promissory note, against all of the defendants.
In the vacation after the May term, 1819, Hinman pleaded to the declaration.
At the October term following, the plaintiff took a judgment by default against the two defendants, Hopkins and Williams, for $854.10, damages, with stay of execution till next term, and until ordered by the court, and continued the cause as to Hinman. The cause is also continued at February term, 1820.
At the May term, 1820, Hinman confessed a judgment to the plaintiff for $883.80 damages, and-for his costs.
After offering to introduce in evidence the foregoing record of the proceedings and judgment, the defendant offered an execution dated March 25, 1823, from the same court, in favor of the plaintiff, and against the same three defendants; on which execution is indorsed, amongst other things, “ levied March 26, 1823.”
Next is the copy of an appraisement of fifty acres of land. This appears to be the same land now in controversy, and which, according to the sheriff’s return of May 22, 1823, was sold by him under the same execution, on the 10th of said May, to Samuel Newton, for $375; that being the highest bid, and more than two-thirds of the appraised value thereof.
Nothing further appears upon the record, after the sheriff’s return of sale on the 22d of May, 1823, until the 23d of February, 1832, when a writ of scire facias was issued from the same court, in behalf of Rising, as the plaintiff, and against Williams and Hopkins, and Mary Ann Hinman, the only child and heir of David W. Hinman, defendants.
Service of the writ was acknowledged by Hopkins and Williams.
*103 Actual service was made upon Mary Ann Hinman, then a minor, who appeared by a guardian ad litem, appointed for her by the court, and thereupon it was ordered by the court that the execution of March 25, 1823, the levy, return, appraisement, sale, and all other things done thereby, be set aside, .and that a new execution issue, to make the amount of said judgment. On the 19th of the next month, to wit: on the 19th of March, 1832, execution issued, and was levied upon the same tract of fifty acres of land, which on the 26th- of the April following, was sold to Daniel Hamilton. At the May term, 1832, of the court, the last mentioned sale was confirmed, and the sheriff ordered to make a deed to the purchaser.
The transcript of the record and proceedings is authenticated by H. Brown, the clerk of the Huron common pleas, who also certifies, under the seal of the court, that he had examined' the records and files of the court, and did not find entered thereon, any other judgments wherein Rising ’was plaintiff, and Hopkins, Williams, and Hinman, were defendants, or either of them, except the case of Rising against Hopkins, entered at February term, 1819.
After examining the various propositions discussed in the argument, the case,'in the opinion of the court, is narrowed down to this single inquiry — Does the record before us show the identical proceedings upon which the premises in controversy were sold ? No mere irregularities shown by the record can defeat a sale, if the proceedings were not virtually void.
There was very clearly, according to the record, a judgment in 1820, against David W. Hinman, and if, under an execution issued upon that judgment, his land had been sold in his lifetime, a good title to it would, without doubt, have passed. So by virtue of a sale on an execution after his death, issued upon the judgment revived against his heirs, a good title would have passed to the purchaser.
The proceedings in this scire facias, as shown by the record, might furnish grounds for a reversal upon error, or the defendants, being parties, and in court, might by plea, have *104 defeated the plaintiff upon the trial. But the court had jurisdiction over the subject matter, and over the person of the defendants; the proceedings, therefore, were not void.
In looking over this record, commencing with the writ in the name of Rising against Hopkins, Williams, and Hinman, on the 22d of May, 1819, till it closes in a judgment against Hinman, at the May term, 1820, we have not been able to escape the conclusion, that it describes the parts only of a single case, a case in which the plaintiff supposed he was obtaining a valid judgment at one term against two of the defendants by default, and as a subsequent term, against the third by confession. The cause is regularly continued against this third defendant until the judgment is finally taken, and every thing appearing in this part of the record which describes the final judgment, connects it with the former part of the case, except the amount of the judgment. This is larger than that rendered at a previous term against the other two defendants, but this is not enough of itself to destroy the apparent connection in the record.
The scire facias, too, describes so much of what is actually found in the previous proceedings and judgment, that there can be no mistake about the judgment referred to. This judgment, therefore, so identified, is the one which was revived. The error in the writ of scire facias, both as to the amount and term, can be shown and corrected by the true record. And as the defendants, in the scire facias, did not object, while it was pending, to the regularity of the proceedings, and have since neglected to resort to their writ of error, all further objections to the proceedings come too late.
In like manner, the last writ of execution bears upon its face evidence enough to show that it was issued upon the judgment which had been revived. Here the true time is stated, to wit: the May term, 1820, though the amount ismisrecited. As we look upon these proceedings, enough is found by which the writ of scire facias and the last execution could both be amended so as to correspond with the original judgment against Hinman; and such an amendment, if *105 would have been within the province of the court of common pleas to allow. But the proceedings without amendment cannot be assailed collaterally, and ¡fcreated as void, when offered to sustain a judicial sale made, under' them. And we hold, with respect to judgments and proceedings under them, especially those of long standing, that an error or misrecital does not vitiate, when enough appears to point out the error, and show how it ought to be corrected.
Such a principle, we believe to be in accordance with the course of decisions in this court.
We think in the present case > the record shows that there was an original judgment not void ; that this judgment was revived by scire facias, and that by virtue of an execution upon it, the premises in controversy were sold.
The record and proceedings, therefore, constituted proper evidence before the court of common pleas of Erie county, in behalf of the defendant in ejectment, and should have been admitted in support of his title.
The court of common pleas erred in rejecting this evidence, and their judgment, for this cause is reversed.